UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

L‍UCAS S‍WEETEN                                                                                          P‍LAINTIFF

v.                                                                                          N‍O. 3:18-‍CV-398-‍BJB

U‍NITED S‍TATES OF A‍MERICA                                                                      D‍EFENDANT

\*\*\*\*\*

**M‍EMORANDUM O‍PINION & O‍RDER**

Back and groin pain plagued Lucas Sweeten ever since he exited the military in 2007. For more than a decade, he sought relief from federal medical providers in Louisville and Montana. Later he received an MRI from non-federal providers who found and removed a spinal tumor. Sweeten filed this Federal Torts Claims Act lawsuit against the Kentucky and Montana providers, alleging their failure to perform an MRI sooner caused him to suffer until the tumor's eventual detection.

The United States seeks summary judgment on three partially overlapping grounds: exhaustion, untimeliness, and lack of expert evidence. Its arguments cover all instances of Sweeten's treatment except his visit to Dr. Charles Inbaraj in Louisville on December 2012. For his Montana treatment, Sweeten failed to exhaust his administrative remedies and also filed this lawsuit outside the time allowed by the state's statute of repose. For the remaining Kentucky visits, Sweeten's expert evidence fails to create a genuine issue of material fact on the critical elements of standard of care and breach. So the Court must grant partial summary judgment (DN 37) to the United States.

**B‍ACKGROUND**

**A. Sweeten's Medical Treatment**

While serving abroad in the armed forces, Sweeten alleges that he began experiencing pain in his right groin. Complaint (DN 1) ¶ 1. When he returned home, that discomfort intensified and spread to his spine. ¶ 2. In 2007 Sweeten sought treatment from the Rex Robley VA Medical Center in Louisville, Kentucky, where doctors performed a hernia surgery. ¶¶ 2–3. After his pain persisted, he pursued additional treatment in Montana at the Fort Harrison VA Medical Center. ¶ 4. Dr. Rollin Pederson evaluated Sweeten and ordered an MRI. *Id.* Sweeten visited the VA facility in Billings to receive the MRI, but Dr. James Schwarten refused to perform it and instead directed him to a urologist who only provided him antibiotics. ¶ 5.

1

During Sweeten's second visit to Billings in 2008, the VA assessed his injuries as "neurological/spinal" and didn't perform any procedures. ¶ 6. On December 5, 2012, Sweeten returned to the Louisville VA complaining of heightened lower back pains. ¶ 7. The attending physician, Dr. Charles Inbaraj, prescribed medication but did not order an MRI. *Id.*

Severe groin pain drove Sweeten to visit yet another VA facility in Maine in 2015. ¶ 9. The doctors performed an MRI that revealed an intradural schwannoma— "a massive nerve sheath tumor"—on Sweeten's spine. ¶¶ 10–11. Sweeten opted to have a private healthcare provider remove the tumor. *Id.* There, Dr. Anand Rughani successfully excised the tumors, but "had to sacrifice the nerve root." ¶ 11.

### B. Sweeten's Administrative and Judicial Complaints

Sweeten complained to the VA in 2017 about his treatment going back to his first consultation in 2007. Administrative Complaint (DN 37-1) at 2. That administrative complaint asserted that "[a]s a direct and proximate result of the Rex Robley VAMC and the Fort Harrison Medical Center's negligence, Mr. Sweeten was forced to suffer … pain [that] could have been resolved with a simple MRI." *Id.* at 5. The VA denied Sweeten's claim request for $5 million in damages. He filed this lawsuit against the United States under the Federal Tort Claims Act in 2018, alleging "Rex Robley VAMC, the VAMC Billings, Montana, and the Fort Harrison Medical Center" acted negligently by failing to detect his injuries with an MRI. *See* Complaint at ¶ 12.

Sweeten supports his claims with testimony from three expert witnesses. Critical to the government's summary-judgment motion is which, if any, of these witnesses address the standard of care and its alleged breach. The first witness, Dr. Rughani, a neurosurgeon, concededly did not address the standard of care or breach. Rughani Report (DN 18-6); PSJ Response (DN 39) at 5 (Rughani testimony limited to damages and causation). The second, Dr. Michael Soboeiro, an internist, stated in his report that "Dr. Inbaraj deviated from the standard of care during the December 5, 2012 visit when he ordered lumbar spine x[-]rays instead of an MRI in a patient with severe, longstanding low back pain …." Soboeiro Report (DN 18-1) at 2. The third, Dr. Paul Kaloostian, opined that "VA Louisville and VA Montana providers" breached the standard of care by "not diagnosing and treating the thoracic schwannoma." Kaloostian Report (DN 18-3) at 2.

The United States moved to exclude Rughani and Kaloostian's testimony, and for summary judgment on Sweeten's claims. Partial Summary Judgment Motion (DN 37). The exception is his allegation that the Louisville facility and Dr. Inbaraj negligently failed to order an MRI or otherwise detect his tumor during his December 5, 2012 visit. That claim, not targeted by the United States' pending motions, will continue.

### DISCUSSION

Sweeten's negligence claims involve three facilities, in three different locations, and fail for three separate reasons.

### A. Billings: Failure to Exhaust

The FTCA requires that, before filing a lawsuit, a "claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...." 28 U.S.C. § 2675(a). This exhaustion requirement is a jurisdictional prerequisite. *McNeil v. United States*, 508 U.S. 106, 111 (1993). A claimant satisfies § 2675(a) if he "gives the agency written notice of his or her claim sufficient to enable the agency to investigate ...." *Douglas v. United States*, 658 F.2d 445, 448 (6th Cir. 1981) (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980)). "For an agency to be able to initiate an investigation into a tort claim ..., it must be apprised of the location and approximate date of the incident." *Tidd v. United States*, 786 F.2d 1565, 1568 (11th Cir. 1986).

Sweeten did not notify the VA of his complaints about his treatment at the Billings VA facility. His administrative complaint does not mention Billings, though it *does* mention the other two facilities at issue: "As a direct and proximate result of the Rex Robley VAMC and the Fort Harrison Medical Center's negligence, Mr. Sweeten was forced to suffer intractable, incapacitating back pain ...." Administrative Complaint at 5. This would signal to any reasonable reader that Sweeten objected to care at the two listed facilities but not the unmentioned third. *See, e.g.*, *Rucker v. U.S. Dep't of Labor*, 798 F.2d 891, 893 (6th Cir. 1986) (adopting the more "reasonable" of an administrative complaint's "two possible interpretations"). By specifically identifying Fort Harrison and Louisville, Sweeten's administrative claim created a negative inference that he was not contesting his treatment anywhere else, including in Billings. The claim did not give the agency "notice ... sufficient to enable [it] to investigate a claim" about another location's undescribed involvement. *Douglas*, 658 F.2d at 448 (quoting *Adams*, 615 F.2d at 289).

The counterargument relies on the complaint's next sentence: "the negligence of the Veterans' Administration physicians and providers was gross, wanton, and reckless, and caused the plaintiff significant and future damages." Administrative Complaint at 5. Was this enough, in light of the more specific references above, to notify the VA of his allegations about Billings? Of course not. This would never past muster under Rule 12(b)(6) because there are no "specific factual allegations" about the place, the time, the location, what was negligent about the treatment, or how it contributed to the injury. *Harden–Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008). How could the agency be on notice to investigate the treatment at this facility when

3

only two other facilities are mentioned?  In *Pearson v. United States*, the plaintiff's administrative complaint alleged negligence against "Capitol Bank," "other FDIC offices," and "affiliated companies."  831 F. Supp. 2d 514, 517–18 (D. Mass. 2011).  Under § 2675(a), the court held this general language was insufficient to provide notice to other FDIC receiverships and allowed only the FTCA claims against Capitol Bank to proceed.  *Id.* at 518 ("If such general language were deemed to be sufficient, the [agency] would be required to investigate any all dealings that the Plaintiff may have had with any [agency] employee ....").  Sweeten's general language would not have reasonably notified the VA that he objected to care in Billings as well as Fort Harrison and Louisville.

The narrative portion of Sweeten's complaint, to be sure, does mention all the *doctors*, including those at Billings.  Administrative Complaint at 4.  As noted above, however, any agency "must be apprised of the location and approximate date of the incident" so it can investigate a tort claim.  *Tidd*, 786 F.2d at 1568.  Sweeten's complaint does neither.  Nor did it ascribe causation to the treatment of the doctors at Billings.  To the contrary, this discussion came before Sweeten attributed causation to the other two facilities.  *Id.* At 5.  So a reasonable reader would not infer that the VA needed to investigate other doctors or facilities.  *Id.* at 5.

So Sweeten has not satisfied § 2675(a)'s exhaustion requirement with respect to the allegations regarding this facility.  This Court therefore lacks jurisdiction over those claims, warranting summary judgment in the government's favor.

### B. Fort Harrison: Statute of Repose

The FTCA requires that courts apply the substantive "law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994).  In Montana, this includes a statute of repose, which "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time."  *Snyder v. Love*, 153 P.3d 571, 573 (Mont. 2006) (quoting *Joyce v. Garnaas*, 983 P.2d 369, 372 (Mont. 1999)).  Montana's medical-malpractice statute of repose states that "in no case may an action be commenced after 5 years from the date of injury."  Mont. Code Ann. § 27-2-205.  The date of the alleged Fort Harrison injury is 2007, but he didn't file this lawsuit until 2018, far outside Montana's five-year repose period.

Sweeten points to a statutory exception that tolls the running of the statutory clock for "any period during which there has been a failure to disclose any act, error, or omission upon which an action is based and that is known to the defendant or through the use of reasonable diligence would have been known to the defendant."  Mont. Code Ann. § 27-2-205.  The act, error, or omission must be "separate from the alleged act of malpractice upon which the claim for professional negligence rests," however.  *Blackburn v. Blue Mountain Women's Clinic*, 951 P.2d 1, 10 (Mont. 1997).

4

Yet Sweeten cites no act, error, or omission known to the defendant other than the underlying medical malpractice allegation. PSJ Response at 8. He never says what if anything about his care that he thinks the VA knew, but kept from him, during these intervening years.

Nor does Sweeten's invocation of the "continuous course of treatment" doctrine supply any help. *Id.* at 7–9. "Under this doctrine, the statute of limitations is tolled as long as the patient is under the continuing care of the physician for the injury caused by the negligent act or omission." *Harrison v. Valentini*, 184 S.W.3d 521, 524 (Ky. 2005).[1] This exception, according to Sweeten, covers his entire period of treatment with the VA—from 2007 to 2015. PSJ Response at 9. But the exception is a creature of the law of Kentucky, not Montana. So why would courts selectively treat this aspect of Kentucky limitations law as an unspoken exception to Montana repose law? Regardless, it would not cover Sweeten's situation even if the statute applied. Kentucky courts have refused to toll statutory limitations beyond a patient's treatment with a single physician. *See, e.g.*, *Sneed v. University of Louisville Hospital*, 600 S.W.3d 221, 227 (Ky. 2020) (refusing to toll time when different doctors at the same hospital treated the patient); *Mullins v. Graber*, No. 2015-CA-000346, 2016 WL 4098760, at *3 (Ky. Ct. App. Jul. 29, 2016) (different state agencies). Sweeten hasn't pointed to any precedent stretching this doctrine across the entire VA system or any similar agency.

Last, Sweeten argues that the limitations period found in 28 U.S.C. § 2401(b) preempts Montana's statute of repose. That provision "forever bar[s]" an FTCA claim unless the plaintiff presents it "to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date … of notice of final denial by the agency to which it was presented." § 2401(b). Some courts have held that § 2401(b) may preempt a state statute of repose, on the ground that the repose deadline would inappropriately shorten the FTCA's six-month filing period after an agency denies an administrative complaint. *See, e.g., Eiswert v. United States*, 322 F. Supp. 3d 864, 870–74 (E.D. Tenn. 2018) (discussing conflict preemption). Sweeten relies on *Kennedy v. United States Veterans Administration*, in which the Sixth Circuit reversed the dismissal of an FTCA claim. 526 F. App'x 450 (6th Cir. 2013). But it did so while noting that the statute of repose was "*not* at play," adding that the court "need not decide whether it [was] preempted by the FTCA." *Id.* at 455 (emphasis added).

More apt is a Sixth Circuit decision rejecting preemption because a plaintiff, like Sweeten, filed the administrative complaint after the repose period had lapsed.

---

[1] The Kentucky Supreme Court invalidated the Commonwealth's medical-malpractice statute of repose before *Harrison* recognized the continuous-treatment doctrine. *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 19 (Ky. 1990); *see also* Ky. Rev. Stat. Ann. § 413.140(2).

*Huddleston v. United States*, 485 F. App'x 744, 746 (6th Cir. 2012). The Sixth Circuit concluded that "[t]he limitations period of § 2401(b) [was] of no moment because the applicable state law provide[d] no cause of action," given the delay in filing. *Id.* Likewise, in this case, the repose period lapsed in 2012, but Sweeten didn't file his administrative complaint until 2017. Administrative Complaint at 2. Because Sweeten had no remaining cause of action for any Montana incidents when he filed his administrative complaint, no conflict remains between the state statute of repose and the federal limitations period.[2]

### C. Louisville: Lack of Expert Evidence

Sweeten alleges the Kentucky VA acted negligently on two occasions—in 2007 and 2012. Complaint ¶¶ 2–3, 7. The United States seeks summary judgment for 2007 but not 2012, arguing none of Sweeten's experts describe a standard of care that the VA treatment allegedly breached. PSJ Motion at 1. The government also moves to exclude Rughani and Kaloostian's reports for violating Federal Rule of Civil Procedure 26's requirement that expert reports contain "all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them[.]" FED. R. CIV. P. 26(a)(2)(B)(i)–(ii).

Kentucky law requires plaintiffs "to put forth expert medical testimony to establish the applicable standard of care[.]" *Blankenship v. Collier*, 302 S.W. 3d 665, 667 (Ky. 2010). Without this evidence, summary judgment is warranted because no evidence would support an essential element of the plaintiff's claim. *See, e.g., Earle v. United States*, No. 6:13-cv-184, 2016 WL 8814363, at *7 (E.D. Ky. Feb. 8, 2016).

Not all proposed expert testimony will satisfy this requirement, however. Although "substantive state law governs the *merits* of a FTCA claim, the Federal Rules govern *procedural* issues." *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019); *see also Douglas v. United States*, No. 10-26, 2011 WL 2633612, *7–9 (E.D. Ky. July 5, 2011) (analyzing Kentucky's medical-expert requirement and the Federal Rules' expert-testimony requirements). As noted above, under the Rules of Civil Procedure, experts generally submit a written report stating their opinions, the basis for them, and the underlying facts or data. FED. R. CIV. P. 26(a)(2)(B)(i)–(ii). "If a party fails to provide [that] information, the party may not "use that information or witness to supply evidence" in litigation, at least not "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Dr. Rughani's report concededly "did not address [the] standard of care," PSJ Response at 5, 10. So Dr. Rughani may not supply the required proof to survive

---

[2] This defense equally applies to his unexhausted claims from Billings, Montana, and provides an alternative basis for dismissing those allegations.

6

summary judgment on that question, though he may still address "the issues of causation and damages." *Id.*

Dr. Soboeiro's report supports Sweeten's case by creating a genuine issue of material fact on standard of care and breach sufficient to survive summary judgment. But it does so only for Sweeten's Kentucky visit on December 5, 2012—the treatment for which the United States doesn't seek summary judgment. The Soboeiro report states that "Dr. Inbaraj deviated from the standard of care during the December 5, 2012 visit when he ordered lumbar spine x[-]rays instead of an MRI in a patient with severe, longstanding low back pain...." Soboeiro's Report at 2. As the government notes, without rebuttal, Soboeiro did not offer an opinion regarding Sweeten's Kentucky claims from 2007. *Id.* at 11–13.

Dr. Kaloostian merely asserts a breach of the standard of care without providing any non-conclusory support for that opinion. The report states: "Breach in standard of care by providers at VA Louisville and VA Montana providers as well as other providers listed below in not diagnosing and treating the thoracic schwannoma in a timely fashion." Kaloostian Report at 2. But "[e]xpert reports must include 'how' and 'why' the experts reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998)). Kaloostian never says which medical professionals should have done something different, what they should've done to detect and remedy Sweeten's back pain, or when and why they should've done it. This is akin to the sort of expert report that, according to the Sixth Circuit, "failed to set forth the standard of care" by "provid[ing] only a two-sentence conclusory statement that the defendants breached the standard of care 'by failing to provide timely and proper medical treatment' ...." *Moore v. United States Department of Agriculture*, No. 17-5363, 2018 WL 1612299, at *3 (6th Cir. Jan. 18, 2018) (applying Kentucky law); *see also Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 663 (6th Cir. 2005) (an expert's conclusory assertions cannot defeat summary judgment). Kaloostian's cursory description does not provide "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" FED. R. CIV. P. 26(a)(2)(b)(i). "Every violation of the Rules has consequences[,]" and the consequence here is excluding this portion of the report under Rule 37. *R.C. Olmstead*, 606 F.3d at 277–78 (Kethledge, J., concurring).

This is not to say that Rule 37 calls for the exclusion of Kaloostian's entire report. Like Rughani's report, it covers causation and damages. PSJ Response at 13–14. The government does not contest this point. Those opinions remain permissible testimony with respect to the claim that remains. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003) ("Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety.").

But Sweeten is left with no admissible expert testimony (or other evidence) to support the crucial elements of breach and standard of care with respect to his 2007 Kentucky treatment.[3] The government therefore must receive partial summary judgment on that claim. Only his December 5, 2012 claim remains.[4]

## ORDER

The Court grants the United States' motion for partial summary judgment (DN 37) and grants in part the United States' motion to exclude expert testimony (DN 37).

Benjamin Beaton, District Judge
United States District Court

March 7, 2022

---

[3] Sweeten attached Dr. Schwarten's deposition to his Response to the summary-judgment motion. Schwarten Dep. (DN 39) at 34–45. This testimony only addresses Sweeten's treatment in Montana, however, and he does not argue it creates a genuine issue of material fact regarding the standard of care.

[4] The same reasoning supplies an alternative basis to grant summary judgment on Sweeten's Montana allegations, even if they didn't fail for lack of exhaustion and untimeliness. Sweeten has not provided any evidence to support the standard of care and breach elements regarding his complaints about his treatment in Montana. See PSJ Motion at 10–11, 20–21.

8